Harper, J.
delivered the opinion of the Court.
Both of these cases turn on the same question, to wit, the definition of the word “mulatto,” or “person of colour,” as used in several acts of assembly. There is considerable difficulty in layingdown any exact rule on this subject,and itmay not perhaps be necessary to do so. There is no legal definition of the term. The popular definition in this State, by which we must be governed, seems to be vague, signifying, generally, a person of mixed white, or European, and negro descent, in whatever proportions the blood may be mixed. The distinctions which have obtained in the French and Spanish American colonies, and in our sister State of Louisana, in relation to persons of mixed European and negro blood, have not been admitted in this State. There, the descendant of a mulatto, that is, a person of an equal mixture of European and negro blood, and a white, is called a quadroon. This term, has not been adopted in our State, and I have no doubt, that according to the popular acceptation of the term among us, such a person would be called a mulatto, or person of colour.
There seems to us to be error in the Judge’s charge to the jury, in the first of the cases statéd, in instructing them, “ that a mulatto was the offspring of parents, one of whom was white, and the other black,” and that he “was disposed to think that where the white blood predominated, the disqualification ought not to attach.” According to this instruction, we understand that the child of a quadroon, and a mulatto, according to the Louisiana distinction, must be accounted white. Yet I suppose that even in Louisiana, such a person would be called a mulatto. It is certainly true, as laid down by the presiding Judge, that “ every admixture of African blood with the European, or white, is not to be referred to the degraded class.” It would be dangerous and cruel to subject to this disqualification, persons bearing all the features of a white, on account of some remote admixture of negro blood ; nor has the term mulatto, or person of colour, I believe, been popularly attributed to such a person. The shades are infinite, and it is difficult to fix a limit. I do not know that we can lay down any other rule, than to give what appears to be the popular meaning of the word; to wit, that where there is a distinct and visible admixture of negro blood, the person is to be denominated a mulatto, or person of *560 coloufi It is a question very proper for a jury. ( la detevmin^rlg ([jey may j)ave the evidence of inspection as to colour, and the peculiar negro features ; the evidence of reputation as to parentage; and such evidence as-was offered in the present ~ , , , . , . , , . . , case, or the persons having been received iu society, ana exercised the privileges of a white man.
In Louisana, as I understand^ and by the Code Noir of France for her colonies, the descendant of a white and a quadroon, or a person having only one-eighth part of negro blood, is accounted a wdiite. Perhaps it would be desirable, that the Legislature should adopts qme such uniform rule here. The rule may be of use to juries in their decisions-- not as a rule of law, which we have no authority to- declare it, but as being founded on experience, and conformable to nature. -
In the first of these cases, that of Davis, we think there was misinstruction in point of law ; and a new trial must' therefore be granted, although upon the evidence, we should be well enough satisfied with the verdict. In the case of Hanna, if I understand the testimony, the witness was a quadroon, and such an one is clearly to be accounted a mulatto, or person of eolour.
Motion granted.